### STATE, Plaintiff, v. LUCAS, et, Defendants.

Common Pleas Court, Franklin County.

No. 29561. Decided January 20, 1949.

## OPINION AND DECISION

By BELT, J:

This cause was submitted to the Court on the questions presented by a plea in abatement to the indictment herein.

The indictment charges the Defendants, one of whom was at the times alleged therein a Commissioner of Franklin County, with conspiracy to defraud the State of Ohio. The bill of particulars filed by the Attorney General in response to a motion therefor alleges that the contracts referred to in the indictment were construction contracts entered into by and between Lucas Brothers, a partnership, of which Defendant Carl Lucas was a member, and the Board of Franklin County Commissioners, whereby said partnership contracted to erect certain housing units for the considerations therein set forth.

It was agreed by all parties in interest in this case that the housing units referred to in the contracts were to be constructed as emergency housing for veterans under the authority conferred by §§1078-62 to 1078-71, both inclusive, GC.

The overt acts charged were the presentation for payment to the County Commissioners by the Defendant Carl Lucas of false and fraudulent statements of money due for work and labor performed under the contracts in question.

For a better understanding of the issues involved, the pertinent sections of the statutory law will be referred to and discussed together with a brief history of the case.

The so-called "Emergency Housing for Veterans" Act became effective August 28, 1946 and appropriates Six Million ($6,000,000.00) Dollars to be allocated to the political subdivisions of the State to provide immediate temporary emergency housing for veterans of World War II, and further provides that the moneys appropriated shall be distributed by the Auditor of State to the several counties of the State upon application by the County Commissioners in the ratio that the total population of the County bears to the total population of the State; that all moneys allocated to a County shall be placed in a special fund in the Treasury of the County to be known as the "County Veterans' Housing Fund," and that the same be expended only as provided in said act. The act further provides that the Commissioners may accept contributions to the fund or contribute thereto from County funds. The express limitations are that the County Commissioners are authorized to expend all or any part of the fund for immediate temporary emergency housing facilities for residents of the County, who are members of the Armed Forces of World War II. The only other provision worthy of mention is that any sum remaining to the credit of the fund of a County on the 31st day of December, 1949 shall be paid to the Treasurer of State and placed in the general revenue fund.

The last mentioned section is somewhat vague and the question arises: In the event contributions are made to the fund by either individuals or the County, whether the whole of the balance, if any, shall be paid into the State Treasury? However, there is no showing in this case that any such contributions were made.

Secs. **13116-1** and **13116-2 GC**, provide respectively as follows:

**Sec. 13116-1 GC.** "If two or more persons conspire to defraud the State of Ohio, or any other political sub-division thereof, in any manner, or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy upon convic-

tion shall be fined not more than five thousand dollars or imprisoned not more than two years, or both."

Sec. 13116-2 GC. "It shall be the duty of the attorney general of Ohio, and he shall have full power and authority to prosecute any person **for conspiring to defraud the state of Ohio** in violation of the provisions of §12810-1* GC. The attorney general in the prosecution of any person for **conspiring to defraud the state of Ohio in violation of said section, shall have authority to call the grand jury in any county of the state for the purpose of conducting an investigation into alleged violations,** and the court of common pleas, or any judge thereof, on written request of the attorney general, may order a special grand jury to be summoned as provided by law, and such special grand jury called at the request of the attorney general may discharge its duties either before, during or after any session of the regular grand jury, and its proceedings shall be independent of the proceedings of the regular grand jury, but of the same force and effect." (Emphasis ours.)

The above-quoted sections, known as the conspiracy statutes, were enacted in 1939 and became effective September 1·of that year. Prior thereto Ohio had no statute making conspiracies, as such, criminal.

The history of this legislation is well-known by the members of the Ohio Bar and grew out of the controversy commonly known as the "Hot Mix" cases in which certain highway contractors were publicly charged with defrauding the State of Ohio in the construction and repair of the State Highway system. Upon investigation it was found that Ohio had no criminal statute adequate to deal with such situations, resulting in the enactment of the conspiracy statute.

The conspiracy to commit a crime is an entirely different offense from the crime that is the object of the conspiracy. It is not a substantive offense, but essentially a crime of intent. It does not merge in the completed offense. The unlawful combination and confederacy constitute the essential element of criminal conspiracy rather than the overt acts done in pursuance thereof, and neither the success nor failure of criminal conspiracies is determinative of the guilt or innocence of the conspirators. Thus, under the act, an entirely new offense in Ohio was recognized and punishment therefor provided.

Under the authority conferred in Section 2 of the act, the Attorney General of Ohio requested the Common Pleas Court

*(Changed to section 13116-1 by the attorney general.)

of Franklin County to cause to be impanelled a special Grand Jury to investigate alleged conspiracies to defraud the State of Ohio. In response thereto a special Grand Jury was duly impanelled, charged as to its duty within the limitations set out in said §13116-2 GC, and proceeded to return the indictment under consideration, together with a number of other indictments charging embezzlement and the presentation of false and fraudulent claims to the Board of County Commissioners, made a crime by §13105 GC. Pleas in abatement to the indictments charging the presentation of false and fraudulent claims and embezzlement were sustained by this Court for the reason, in the opinion of the Court, that such special Grand Jury was not authorized or empowered to present an indictment charging a crime other than the crime of conspiracy to defraud the State under the limitations contained in §13116-2 GC. That section seems to retain sole jurisdiction in the law enforcement officers of the Counties to prosecute conspiracies pertaining to County funds or funds of any political sub-division of a County, the State being limited solely to investigations and presentment of indictments where State funds only are involved and then only in cases of conspiracy.

The question raised by the pleas in abatement is whether or not the Attorney General of Ohio, upon his own motion, is authorized to impanel a special Grand Jury to investigate alleged violations of the law, making it an offense for two or more persons to conspire to defraud a political sub-division of the State of Ohio. The ultimate question presented by the pleas is whether or not the funds in question are funds of Franklin County or funds of the State of Ohio.

The funds in question are a part of the Six Million ($6,000,000.00) Dollar appropriation made by the General Assembly for the "Emergency Housing for Veterans" Project. This fund so appropriated was placed in a special fund in the Treasury of Franklin County. Under the act in question it could not be expended by the County Commissioners for purposes other than the furtherance of such project. The fund lost its identity as a State fund upon being paid to Franklin County. Whether the State would have a cause of action to recover from Franklin County any part of said funds not expended for the purposes provided for in said act is not before the Court and need not now be determined. It seems clear, however, that the State would have no civil cause of action against any person to whom said funds were unlawfully paid. If this fund is not a State fund, then the special Grand Jury

impanelled by request of the Attorney General would have no authority to return an indictment for conspiracy or otherwise, under the provisions of §13116-2 GC, for the reason that the Attorney General is given specific power only to prosecute for conspiring to defraud the State of Ohio. This is the express limitation contained in said section. Funds legally appropriated by the State and paid to a County to be used for a specific purpose become County funds.

Political sub-divisions of the State are entitled to a share of many funds collected by the State for express purposes, such as the gasoline fund, auto tax fund, sales tax fund, school fund, and others, all of which by express direction of the law must be used by the Counties and other political sub-divisions for the purposes provided by Statute. It would not be contended that any of such funds, after payment thereof to the political sub-divisions, are still State funds, although collected and distributed by the State, although, under the provisions of the various statutes, such funds may only be legally used for specified purposes.

Claim is made that the language of §13116-1 GC, is, in part, taken bodily from Section 37 of the Federal Criminal Code and that the Federal Courts have broadly interpreted that section. That is no doubt true, but the section itself is much broader than the section of the State Code under discussion in that it provides that if two or more persons conspire either to commit any offense against the United States or to defraud the United States in any manner, or for any purpose, such offense is cognizable under that section. The section, however, under discussion in this case, insofar as the power of the Attorney General extends, is limited to prosecutions for conspiring to defraud the State and he is not authorized to prosecute for conspiring to defraud a County or any sub-division of the State.

It is the specific holding of this Court that the funds in question concerning which a conspiracy is charged in the indictment in this case are County funds and that, therefore, the Attorney General had no power to have a Grand Jury impanelled to consider such alleged violation.

Holding as we do, the pleas in abatement to the indictment herein are sustained.

If there is sufficient evidence to warrant an indictment in any of these cases, the Defendants not having been in jeopardy, further proceedings are indicated and necessary. There is no question but that the Prosecuting Attorney of Franklin County and a regular or special Grand Jury, duly impanelled, have complete jurisdiction to inquire into any

and all of the alleged offenses contained in this and the other indictments to which the Court has referred, and such inquiry should be launched in due course. To that end a copy of this Opinion is being submitted to the Prosecuting Attorney of Franklin County.

Sec. 13439-10 GC, reads as follows:

"Accused not discharged when indictment quashed, etc. When a motion to quash, or a plea in abatement is adjudged in favor of the accused, the court may order the re-submission of the case to the grand jury, if then pending, or to the next succeeding grand jury, and in such case the accused may be committed to jail or held to bail in such sum as the court requires for his appearance to answer at a time to be fixed by the court."

Under authority of that section all of the accused in this and the other cases referred to are hereby ordered committed to the jail of Franklin County and held to await the action of a Grand Jury, duly impanelled therein, if in default of bail, which is hereby fixed in the sum of One Thousand ($1,000.00) Dollars in each case.

Counsel for the Defendants may prepare and submit to other Counsel and to the Court an entry conforming to this Opinion and Decision.