**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James T. LICAVOLI (82–3498), Anthony Liberatore (82–3509, 82–3606), John P. Calandra (82–3510), Pasquale Cisternino (82–3511), Ronald Carabbia (82–3512), Kenneth Ciarcia (82–3513), Defendants-Appellants.**

Nos. 82–3498, 82–3509 to 82–3513 and 82–3606.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 14, 1983.

Decided Jan. 9, 1984.

See also 6 Cir., 669 F.2d 391.

James R. Willis argued, Cleveland, Ohio, for James T. Licavoli.

Elmer A. Giuliani argued, Mark Devan, Cleveland, Ohio, for Anthony Liberatore.

Burt J. Fulton argued, Elaine Harmon, Cleveland, Ohio, for John P. Calandra.

Ralph D. Sperli, Cleveland, Ohio, for Pasquale Cisternino.

Leonard W. Yelsky argued, Angelo F. Lonardo, Cleveland, Ohio, for Ronald Carabbia.

Jonathan H. Soucek, Cleveland, Ohio, for Kenneth Ciarcia.

John P. Sopko, Strike Force Atty., Cleveland, Ohio, William C. Bryson argued, Washington, D.C., for the U.S.

Before MERRITT and KENNEDY, Circuit Judges, and PRATT, District Judge.[*]

CORNELIA G. KENNEDY, Circuit Judge.

The six defendant-appellants were convicted of conspiring to participate in the affairs of an enterprise through a pattern of racketeering activities in violation of the Racketeer Influenced and Corrupt Organizations (RICO) statute, 18 U.S.C. § 1962(c) and (d) [1] following a jury trial, and now appeal those convictions. Defendant Liberatore also appeals a denial of his motion for a new trial on a bribery conviction. All

---

[*] Honorable Philip Pratt, United States District Court for the Eastern District of Michigan, sitting by designation.

1. Those sections provide as follows:
 (c) It shall be unlawful for any person to be employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
 (d) It shall be unlawful for any person to violate any of the provisions of subsections (a), (b), or (c) of this section.

seven appeals have been consolidated. We affirm the judgments of conviction of all defendants.

In order to sustain a prosecution under RICO the government must establish that defendants engaged in a "pattern of racketeering activity," defined as at least two acts of racketeering activity. 18 U.S.C. § 1961(5). "Racketeering activity" is defined in 18 U.S.C. § 1961(1). The facts elicited by the prosecution at trial to prove the defendants' pattern of racketeering activity are lengthy and complex. Briefly, the government asserts (and we agree) that the evidence, viewed in the light most favorable to it, established the following.

## I. Facts

Defendant Licavoli is a leader of organized crime in Cleveland. Liberatore is his second-in-command, and Calandra also holds a position of confidence and responsibility within the organization. Carabbia and Cisternino act for the organization, carrying out the orders of the top men. Ciarcia manages a car dealership and supplies vehicles for the organization's criminal activities and also acts on behalf of the organization in other ways.

In the spring of 1976 Licavoli decided that he needed to have one Danny Greene killed. Greene was the leader of a rival criminal organization which had developed a monopoly on criminal activity in West Cleveland. Licavoli had others in his organization contact Raymond Ferritto regarding his wish to have Greene killed.[2] Ferritto testified that he met at various times with each of the defendants (except Liberatore), sometimes separately, sometimes in groups, to plan Greene's murder. Ferritto stalked Greene for some months without success, sometimes assisted by Cisternino. After Ferritto had been on the job for some time he asked Licavoli for money to cover his expenses, and he was eventually given $5,000 by Carabbia. Licavoli also told Ferritto that he would get a percentage of money derived from gambling in the

Warren and Youngstown areas when the murder was accomplished.

Ferritto and Cisternino attempted to bomb Greene's apartment building in order to kill him, but never carried through because of the regular presence of older people in the area. On another occasion they drove to a party attended by Greene intending to kill him. They located Greene's car but found that it was guarded by members of Greene's criminal organization seated in an adjacent car.

Meanwhile Liberatore arranged with two other men, Aratari[3] and Guiles, to kill others in Greene's criminal organization, and ultimately to help kill Greene as well. Aratari and Guiles were at times assisted in their efforts by defendants Carabbia, Calandra, Cisternino and Ciarcia. Ciarcia and another man provided Aratari and Guiles with a car and weapons.

Licavoli had Greene's phone tapped in an effort to obtain reliable information regarding Greene's daily activities. Carabbia and Cisternino gave Ferritto the resulting tapes. One tape revealed that Greene was to go to a dentist's appointment at 2:30 p.m. on Thursday, October 6, 1977. Defendants Licavoli, Cisternino and Carabbia played this tape for Ferritto on Monday, October 3.

On Thursday, the day of Greene's dentist appointment, Cisternino and Ferritto built a bomb in an apartment maintained by Cisternino. Ferritto drove to the vicinity of the dentist's office with the bomb in his car, a Plymouth. Carabbia drove a second car to the office, a Nova. This car had a special box mounted on the side in which the bomb was to be placed. Cisternino remained behind at the apartment to listen to a police scanner for calls. A few minutes after Ferritto and Carabbia arrived at the dentist's, Aratari and Guiles arrived in another car, supplied by Ciarcia as the car to be used in "the Danny Greene case." Guiles was armed with a high powered rifle. The plan was for Guiles to shoot Greene if he

---

**2.** Ferritto later testified against all six defendants in their state trials for Greene's murder.

**3.** Aratari testified at the trial in this case.

had the opportunity. The bomb was to be used as a backup method.

Greene arrived for his appointment, parked his car and entered the office. Guiles apparently had no opportunity to shoot. A few minutes later a parking space opened next to Greene's car. Ferritto placed the bomb in the box on the side of the Nova, parked the Nova next to Greene's car, and activated the bomb. Then he got into the driver's seat of the Plymouth, which was parked down the block. When Greene emerged from the office Ferritto began to drive away, with Carabbia in the back seat. Carabbia then detonated the bomb with a remote control device and Danny Greene was killed.

All six defendants in the present case were tried for Danny Greene's murder in state court. Cisternino, Carabbia and Ciarcia were convicted of Greene's murder.

The RICO prosecution now on appeal also relied on a separate set of events to establish a predicate criminal act. Ms. Geraldine Rabinowitz[4] worked as a file clerk in the Cleveland office of the FBI, while her then-fiance Jeffrey Rabinowitz worked at the car dealership that Ciarcia managed. In the spring of 1977 Ciarcia asked Ms. Rabinowitz to obtain confidential information from the FBI regarding investigations of himself, Liberatore, and Licavoli. Ms. Rabinowitz complied, after some hesitation, and continued to steal confidential information for Ciarcia from time to time throughout the summer of 1977. Ciarcia assured Ms. Rabinowitz that she would in return be "covered" for a downpayment on a new home that she and her fiance planned to buy. On October 12, 1977 the Rabinowitzes met with Liberatore and Ciarcia, and the Rabinowitzes asked for $15,000 for a down payment on the home. Although Liberatore was at first unwilling to comply with this request, the next day he delivered a paper bag to Ms. Rabinowitz containing $15,000 in cash. Counsel for Liberatore characterized this payment as a "loan", but no interest was set, no repayment schedule made, and no collateral specified. The sto-

len FBI documents were later found at Ciarcia's car dealership. All six defendants were charged with two counts of bribery and one count of conspiracy to commit bribery and were tried in federal court. Ciarcia pleaded guilty to all three counts, and Liberatore was convicted of the conspiracy count and one substantive count.

All six defendants were tried together in federal court for the RICO violation. The jury found all six guilty of having violated RICO. Defendants now raise a large number of issues on appeal.

## II. Conspiracy to Murder May Be a Predicate Act for a RICO Conviction

The District Court instructed the jury that there were three possible acts which the jury could find to serve as predicate acts of racketeering for the RICO charge. These were: 1) conspiracy to murder Danny Greene; 2) the murder of Danny Greene; and 3) bribery. The court instructed that the bribery act applied only to defendants Liberatore and Ciarcia. The jury therefore had to find that the other four defendants both conspired to murder, and murdered Danny Greene in order to convict them of the RICO violation. These four defendants (Licavoli, Calandra, Carabbia, Cisternino) now argue that conspiracy to commit murder cannot serve as a predicate act for a RICO conviction, and that their RICO convictions therefore cannot stand.

Under 18 U.S.C. § 1961(1)(A) racketeering activity includes "any act or threat involving murder...." Conspiracy to murder on its face fits within this definition of racketeering activity. Conspiracy is "an act ... involving murder." However the original versions of the bill that ultimately became RICO specifically included conspiracy as a predicate act under section 1961, while the final bill did not. Defendants argue that Congress' failure specifically to enumerate conspiracy in the final version of the bill demonstrates a legislative intent not to allow conspiracy as a predicate act.

The Second Circuit rejected this argument with respect to conspiracies to commit acts listed in the definition of racketeering

---

4. Ms. Rabinowitz testified at the federal bribery trial and the trial in this case.

activity under section 1961(1)(D) in *United States v. Weisman,* 624 F.2d 1118 (2d Cir.), cert. denied, 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 91 (1980). *See also United States v. Brooklier,* 685 F.2d 1208, 1216 (9th Cir. 1982) (conspiracy to extort may be a predicate act), *cert. denied,* —— U.S. ——, 103 S.Ct. 1194, 75 L.Ed.2d 439 (1983); *United States v. Phillips,* 664 F.2d 971, 1015 (5th Cir.1981) (conspiracy to import marijuana may be a predicate act), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982).

Under 18 U.S.C. § 1961(1)(D), racketeering activity includes:

[A]ny offense involving fraud connected with a case under title 11, fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States.

The Second Circuit in *Weisman* based its holding on the expansive language in (D), "any offense involving" the enumerated substantive crimes, "punishable under any law of the United States." [5] The court noted:

This conclusion is bolstered by the fact that subsections (B) and (C) [of § 1961(1)], which list most of the other predicate acts chargeable under RICO, conspicuously lack the broad "any offense involving" language of subsection (D) and, in fact, require that the act be indictable under specifically enumerated sections of the criminal code.[6]

624 F.2d at 1124.

■ Subsection (A) of 18 U.S.C. § 1961(1) contains language similarly expansive to that in subsection (D). Under (A), racketeering activity includes "any act

or threat involving" the substantive crime, "chargeable under state law and punishable by imprisonment for more than one year." The "provisions of ... [RICO] should be liberally construed to effectuate its remedial purposes." [7] Organized Crime Control Act of 1970, Pub.L. No. 91–452, § 904(a), 84 Stat. 947. We see no indication that Congress intended conspiracy to commit murder not to be a predicate act under section 1961(1)(A) along with conspiracy to extort, to commit securities fraud or to import drugs under section 1961(1)(D). The Fifth Circuit took the position that conspiracy to commit murder may be a predicate act in *United States v. Welch,* 656 F.2d 1039, 1063 n. 32 (5th Cir.1981), *cert. denied,* 456 U.S. 915, 102 S.Ct. 1768, 72 L.Ed.2d 173 (1982), saying,

There is merit to the argument that subsection A [of 18 U.S.C. § 1961(1)] is as broad and inclusive as the language of subsection D. If conspiracy to commit a section D offense can serve as a predicate act for a RICO charge, then conspiracy to commit a subsection A offense should also be able to serve as a predicate act. The language of subsection A itself— which includes "any act or threat involving murder"—appears to contemplate a conspiracy to commit murder. A conspiracy to commit murder is an act *involving* murder. (emphasis in original)

We adopt the Fifth Circuit's reasoning in *Welch* and hold that conspiracy to commit murder may be a predicate act under 18 U.S.C. § 1961(1)(A) for a RICO charge.

III. Murder and Conspiracy to Murder Are Separate Offenses under Ohio Law and May Both Be Predicate Acts under RICO

For a defendant to be convicted under RICO he must have committed more than

---

**5.** This language also appeared in the original drafts of the bill that became RICO.

**6.** *Cf. Brooklier, supra,* which holds that

[c]onspiracies or attempts can serve as the underlying racketeering activities because 18 U.S.C. § 1961(1)(B) defines "racketeering activity" as including those offenses indictable under 18 U.S.C. § 1951. Section 1951, in turn, makes punishable attempts or conspira-

cies to obstruct, delay, or affect commerce by robbery, extortion or physical violence.

685 F.2d at 1216.

**7.** Courts have construed the provisions of RICO liberally in applying its criminal remedies. *See* Blakey, *The RICO Civil Fraud Action in Context: Reflections on Bennett v. Berg,* 58 Notre Dame L.Rev. 237, 245 n. 25 (1982), and cases cited therein.

one act of racketeering activity. In order for a state crime, such as murder or conspiracy to murder to serve as a predicate act, it must be "chargeable under state law and punishable by imprisonment for more than one year" under 18 U.S.C. § 1961(1)(A). Federal law holds that conspiracy to commit a substantive offense and the substantive offense itself are two separate crimes. *See, e.g., Iannelli v. United States,* 420 U.S. 770, 777, 95 S.Ct. 1284, 1289, 43 L.Ed.2d 616 (1975). Under Ohio law, conspiracy to murder and murder are also two separate crimes. However, a person convicted of the substantive crime "shall not be convicted of conspiracy involving the same offense." Ohio Rev.Code § 2923.01(G). Thus under Ohio law a person cannot be convicted of or sentenced for both conspiracy to commit murder and the murder crime itself. Defendants argue that the two acts consequently are not both "chargeable under state law and punishable for more than one year."

We disagree, for two reasons. First Ohio law, in both the Ohio Revised Code and the earlier case law, provides that conspiracy to commit a substantive act and the substantive act are separate offenses, both separately chargeable under state law. In *State v. Lucas,* 85 N.E.2d 154, 156 (Ohio Ct.C.P. 1949), the court stated:

> The conspiracy to commit a crime is an entirely different offense from the crime that is the object of the conspiracy. It is not a substantive offense, but essentially a crime of intent. It does not merge in the completed offense. The unlawful combination and confederacy constitute the essential element of criminal conspiracy rather than the overt acts done in pursuance thereof, and neither the success nor failure of criminal conspiracies is

determinative of the guilt or innocence of the conspirators.

*Lucas* predates the current Ohio statutory provision, Ohio Rev.Code § 2923.01.[8] The statute in *Lucas* made it a crime to conspire to defraud. Under this statute, unlike the current one, a defendant could be convicted and sentenced separately for the substantive crime and conspiracy to commit the substantive crime. *Lucas* is significant here, however, for its articulation of the common law of Ohio that the conspiracy and the substantive crime are "entirely different."

The Ohio Revised Code has not modified this common law precept. Murder is a crime, chargeable under Ohio law, Ohio Rev.Code § 2903.02, and punishable by imprisonment for more than one year, § 2929.02. Conspiracy is also a crime in Ohio, Ohio Rev.Code § 2923.01(A), and is punishable by imprisonment for more than one year, § 2929.11. RICO nowhere indicates that two criminal acts otherwise qualifying as predicate acts may not both constitute predicate acts because under state law a defendant could not be convicted of or sentenced for both crimes.

 Secondly, contrary to defendants' contention, it is irrelevant whether these particular defendants · could have been charged under Ohio law and imprisoned for more than one year for both conspiracy to murder and murder. This argument has been raised and rejected several times in the context of state statutes of limitations, when the state statute has run on a state crime which is offered as a predicate act for a RICO violation. Courts have held that regardless of the running of the state statute the defendant is still "chargeable" with the state offense within the meaning of 18

---

**8.** The statute provides, in part:

(A) No person, with purpose to commit or to promote or facilitate the commission of aggravated murder or murder, kidnapping, compelling prostitution or promoting prostitution, aggravated arson or arson, aggravated robbery or robbery, aggravated burglary or burglary, or a felony offense of unauthorized use of a vehicle, corrupting another with drugs, theft of drugs, or illegal

processing of drug documents shall do either of the following:

(1) With another person or persons, plan or aid in planning the commission of any such offense;

(2) Agree with another person or persons that one or more of them will engage in conduct which facilitates the commission of any such offense.

U.S.C. § 1961(1)(A). *United States v. Malatesta,* 583 F.2d 748, 758 (5th Cir.1978), *cert. denied,* 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979); *United States v. Davis,* 576 F.2d 1065, 1066–67 (3d Cir.), *cert. denied,* 439 U.S. 836, 99 S.Ct. 119, 58 L.Ed.2d 132 (1978); *United States v. Forsythe,* 560 F.2d 1127, 1134 (3d Cir.1977). The reference to state law in the statute is simply to define the wrongful conduct, and is not meant to incorporate state procedural law. *United States v. Brown,* 555 F.2d 407, 418 n. 22 (5th Cir.1977), *cert. denied,* 435 U.S. 904, 98 S.Ct. 1448, 55 L.Ed.2d 494 (1978). The Third Circuit noted in *United States v. Frumento,* 563 F.2d 1083, 1087 n. 8A (3d Cir. 1977), *cert. denied,* 434 U.S. 1072, 98 S.Ct. 1256, 55 L.Ed.2d 775 (1978):

> Section 1961 requires, in our view, only that the *conduct* on which the federal charge is based be typical of the serious crime dealt with by the state statute, not that the particular defendant be "chargeable· under State law" at the time of the federal indictment. (emphasis in original)

We agree and hold that conspiracy to murder and murder may both constitute predicate acts in this case, regardless of the fact that a defendant cannot under Ohio law be separately punished for having committed both crimes. Ohio law does define the two acts as separate crimes, each punishable by imprisonment for more than one year, and this is all that is required under 18 U.S.C. § 1961(1)(A).

## IV. Acquittal in State Court of Criminal Acts Does Not Bar Their Use as Predicate Acts for a RICO Conviction

Defendants Licavoli and Calandra were acquitted in state court proceedings of murdering Greene and conspiring to murder Greene. Consequently, they argue, they were not "chargeable" with the murder or conspiracy to commit murder, as required under 18 U.S.C. § 1961(1)(A), and murder and conspiracy to commit murder could not therefore serve as predicate acts for their RICO convictions.

■ We disagree. *Frumento* is directly on point. Defendants in that case were acquitted in state court on charges of bribery, extortion and conspiracy to accept bribes. They were then convicted in federal court of violating 18 U.S.C. § 1962(c) and (d), with the above crimes as predicate acts. On appeal defendants argued that the conviction was barred by the double jeopardy clause of the fifth amendment. The Third Circuit disagreed. The court said,

> [RICO] forbids "racketeering," not state offenses per se. The state offenses referred to in the federal act are definitional only; racketeering, the federal crime, is defined as a matter of legislative draftsmanship by a reference to state law crimes. This is not to say ... that the federal statute punishes the same conduct as that reached by state law. The gravamen of section 1962 is a violation of federal law and "reference to state law is necessary only to identify the type of unlawful activity in which the defendant intended to engage." *United States v. Cerone,* 452 F.2d 274, 286 (7th Cir.1971). (Footnote omitted.)

563 F.2d at 1087. *See also United States v. Phillips,* 664 F.2d 971, 1015 (5th Cir.1981), *cert. denied,* 455 U.S. 912 (1982); *United States v. Anderson,* 626 F.2d 1358, 1367 (8th Cir.1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981).

## V. The Prior Testimony of Raymond Ferritto Was Properly Admitted at Trial

Ferritto had testified at the state murder trials [9] of the six defendants. He refused to testify at the federal RICO trial, however, claiming that the government had breached its plea agreement with him, and consequently he had to serve more time than he had been promised. Also, he asked for immunity from prosecution for perjury as a condition of his testifying. The govern-

---

**9.** There were three separate trials in state court: 1) the trial of Licavoli, Cisternino, and Carabbia; 2) the trial of Calandra, Ciarcia and Lanci (not a defendant in this action); and 3) Liberatore's trial. The charges in all three trials were conspiracy to murder Danny Greene, and Greene's murder.

ment granted him use immunity, that is immunity from the use of his testimony in the RICO case to prove that his prior testimony was perjurious, but granted him no immunity for any perjury he might commit in the RICO trial itself. Ferritto still refused to testify and the court held him in contempt.

The court then granted the government's motion to read Ferritto's testimony from the three state trials into the record, finding that Ferritto was "unavailable" within the meaning of Fed.Rule Evid. 804(a). The court instructed the jury that Ferritto's testimony in the state trial of Licavoli, Cisternino and Carabbia was admissible only against those three defendants; Ferritto's testimony from the trial of Calandra and Ciarcia was admissible only as to those two, and Ferritto's testimony in Liberatore's trial was admissible only against Liberatore. Ferritto's testimony in the first two trials was substantially the same. Upon the request of Liberatore's attorney the prosecution did not read Ferritto's full testimony from Liberatore's trial, but only the few lines that related specifically to Liberatore.

■ Defendants make several arguments regarding Ferritto's testimony. First they claim that the government was responsible for Ferritto's failure to testify. He was therefore not "unavailable" under Fed.Rule Evid. 804(a), and his testimony was inadmissible. Rule 804(a) states, in part, "[a] declarant is not unavailable as a witness if his . . . absence is due to the procurement or wrongdoing of the proponent of his statement *for the purpose of preventing the witness from attending or testifying*" (emphasis added). The law is clear that Ferritto's prior testimony, if otherwise admissible, was not made inadmissible by the government's actions unless the government actually sought to prevent the witness from testifying. *Steele v. Taylor*, 684 F.2d 1193, 1202 (6th Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 1501, 75 L.Ed.2d 932 (1983); *United States v. Seijo*, 595 F.2d 116, 119–20 (2d Cir.1979). This was hardly the case. Ferritto was the government's star witness. The government even offered him immuni-

ty from possible perjury prosecution to induce him to testify. There is no suggestion in the record that the government breached its plea agreement *in order* to prevent Ferritto from testifying at the RICO trial.

Defendants further argue that Ferritto's testimony should not have been admitted because 1) defendants did not have an adequate motive and opportunity to cross-examine Ferritto in the state proceedings, and 2) admission of the prior testimony violated the confrontation clause of the sixth amendment.

■ Federal Rule of Evidence 804(b)(1) allows admission of prior testimony if the issues in both cases are sufficiently similar so as to give the party against whom the testimony is offered "an opportunity and similar motive to develop the testimony." Here the issues in the cases were nearly identical, since in the state cases the defendants were charged with murder and conspiracy to commit murder, and in the RICO prosecution these two acts constituted the predicate acts for the RICO conviction. Defendants argue that because of the additional "enterprise" element that must be shown in a RICO prosecution their motive to cross-examine was not the same here as in the state prosecutions. However, defendants have failed to point to any matter that they would have raised in cross-examination with respect to the enterprise element that they did not raise in the prior proceedings.

Each defendant certainly had adequate motive to cross-examine Ferritto with respect to testimony given in his own trial. The jury was carefully instructed to consider against each defendant only the testimony that Ferritto had given at the defendant's own trial. We agree with defendants that it may be humanly impossible for a juror completely to compartmentalize multiple versions of an event and apply each version only against a certain defendant. However, this is not to say that evidence implicating more than one defendant in a joint prosecution may never be admitted with an instruction that it applies only to a single defendant. In this case the testimo-

ny in the state trials was substantially the same, so it is hard to see how any of the defendants was prejudiced by admission of more than one version of the events. To the extent that there are discrepancies in Ferritto's testimony the jury was made aware of these by virtue of having heard the different versions. The jury heard both Ferritto's direct testimony and cross-examinations. We cannot say that Ferritto's testimony was improperly admitted.

█ The above analysis applies as well with respect to defendants' confrontation clause argument. The Supreme Court long ago held that admitting testimony of an unavailable witness does not violate the confrontation clause. *Mattox v. United States,* 156 U.S. 237, 242–44, 15 S.Ct. 337, 339–40, 39 L.Ed. 409 (1895). The confrontation clause requires that a hearsay declarant be unavailable, and that his statements bear some "indicia of reliability." *Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980); *Mancusi v. Stubbs,* 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1974); *California v. Green,* 399 U.S. 149, 161, 90 S.Ct. 1930, 1936, 26 L.Ed.2d 489 (1970); *Pointer v. Texas,* 380 U.S. 400, 407, 85 S.Ct. 1065, 1069, 13 L.Ed.2d 923 (1965). We have concluded that Ferritto was unavailable. Ferritto has been cross-examined at length by one or more of the defendants on all of the testimony that was read to the jury and those cross-examinations were also read to the jury. All of the defendants have cross-examined Ferritto about the same set of facts. The defendants' motives for cross-examination at the state trials and the RICO trial were substantially identical. We find that the indicia of reliability necessary to satisfy the confrontation clause are present here and hold that Ferritto's testimony in the state prosecutions was properly admitted.

█ Defendants also claim that they were prejudiced by the fact that the District Court had Ferritto's testimony re-read to the jury, upon the jury's request, during jury deliberations. It is within the judge's discretion to re-read testimony for a deliberating jury. Indeed, the cases in this area generally challenge the judge's decision *not* to have the testimony re-read to the jury. *See, e.g., United States v. Toney,* 440 F.2d 590, 591–92 (6th Cir.1971); *United States v. Almonte,* 594 F.2d 261, 265 (1st Cir.1979). The transcripts of Ferritto's testimony are lengthy and comprised a large portion of the state's case, and it is understandable that the jury felt a need to hear them a second time during deliberations. Defendants have failed to show that the District Court abused its discretion in allowing the transcripts to be read a second time.

## VI. There was Sufficient Evidence for the Jury to Convict the Defendants

Defendant Carabbia argues that there was insufficient evidence to show that defendants agreed to participate in the affairs of the enterprise. We find this claim to be wholly without merit, as the summary of facts recited above—taken from testimony introduced at trial—demonstrates.

Defendant Liberatore argues that there was insufficient evidence to establish that he and Ciarcia bribed Ms. Rabinowitz to provide them with confidential FBI information and documents. This Court dealt fully with this question and resolved it against Liberatore in *United States v. Lanci and Liberatore,* 669 F.2d 391, 393 (6th Cir.), *cert. denied,* 457 U.S. 1134, 102 S.Ct. 2960, 73 L.Ed.2d 1350 (1982), and we will not consider it further here.

## VII. Principles of Double Jeopardy Did Not Bar the Government from Using Bribery as a Predicate Offense for the RICO Convictions

Defendants Liberatore and Ciarcia were convicted in federal court of bribing Ms. Rabinowitz. This bribery offense was also used as a predicate act for the RICO convictions of these two defendants. Liberatore and Ciarcia now claim that use of the bribery offense in the RICO prosecution violated the double jeopardy clause of the fifth amendment.

The Supreme Court articulated the analysis to be applied to statutory schemes in

order to evaluate them for double jeopardy purposes in *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). First, courts should apply the "*Blockburger* test" articulated in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), in order to determine whether the same act constitutes a violation of two distinct statutory provisions. To see whether there are two offenses or only one the court must determine whether *each* provision requires proof of a fact which the other does not. When the offenses are the same under the *Blockburger* test, *Whalen* holds that "cumulative sentences are not permitted, unless elsewhere specifically authorized by Congress." 445 U.S. at 692, 100 S.Ct. at 1438.

Even if the predicate act of bribery and the RICO charge fail the *Blockburger* test, which we do not decide,[10] Congress did specifically authorize cumulative sentences under RICO. *United States v. Hartley,* 678 F.2d 961 (11th Cir.1982); *United States v. Anderson,* 626 F.2d 1358, 1367 (8th Cir. 1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981); *United States v. Aleman,* 609 F.2d 298, 306 (7th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); *United States v. Rone,* 598 F.2d 564, 571 (9th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980). As the *Rone* court noted:

> There is nothing in the RICO statutory scheme which would suggest that Congress intended to preclude separate convictions or consecutive sentences for a RICO offense and the underlying or predicate crimes which make up the racketeering pattern. The racketeering statutes were designed primarily as an additional tool for the prevention of racketeering activity, which consists in part of the commission of a number of other

crimes. The Government is not required to make an election between seeking a conviction under RICO, or prosecuting the predicate offenses only. Such a requirement would nullify the intent and effect of the RICO prohibitions.

598 F.2d at 571.

■ This Court has ruled on a closely related question in *United States v. Morelli,* 643 F.2d 402 (6th Cir.), *cert. denied,* 453 U.S. 912, 101 S.Ct. 3143, 69 L.Ed.2d 994 (1981). Morelli was convicted of two counts of wire fraud, and these acts were used as predicate offenses for a RICO conviction. Morelli complained that he was subject to cruel and unusual punishment in violation of the eighth amendment because he was sentenced to fifteen years for the RICO violation, in addition to ten years for the wire fraud crimes.[11] We held that Congress "may constitutionally make the commission of crimes within a specified period of time and within the course of a particular type of enterprise an independent criminal offense...." 643 F.2d at 413. We now hold that there was no violation of double jeopardy in trying defendants Liberatore and Ciarcia for both the federal bribery charge and the RICO charge.

## VIII. The District Court Did Not Err in Its Evidentiary Rulings

We have reviewed defendants' challenges to various evidentiary rulings made by the District Court in admitting:

1) references to court-ordered electronic surveillance of Licavoli in which the agent referred to Licavoli's activities as "criminal";

2) references to prosecution witnesses as being in the Witness Protection Program as suggesting that defendants had threatened the witnesses;

---

10. *Cf. United States v. Anderson,* 626 F.2d 1358, 1367 (8th Cir.1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981), in which the court concluded that the enterprise *element* of the RICO offense constitutes an element of the crime not required for the predicate criminal acts.

11. Appellants Liberatore and Ciarcia are serving concurrent, not consecutive sentences for their bribery and RICO convictions.

3) references to plea bargaining agreements as suggesting that the government vouched for the truthfulness of the witness' testimony;

4) the admission of co-conspirator statements under Fed.Rule Evid. 804(d)(2)(E) as violating the confrontation clause of the sixth amendment.

We find all of these challenges to be without merit.

## IX. The District Court Did Not Err in Denying Defendants' Motion for Severance

Defendants Licavoli, Calandra and Cisternino argue that the District Court erred in failing to grant their motions for severance at trial under Rule 14, Fed.R.Crim.Pro. They argue that they were prejudiced by evidence offered against other defendants at trial, and that the court's instructions to the jury could not have obviated that prejudice. Defendants complain primarily of evidence of bribery introduced against Liberatore and Ciarcia.

 Rule 14 provides that severance may be granted if substantial prejudice would result to an individual defendant tried jointly with another.[12] The question of whether to grant a motion for severance is committed to the trial court's discretion, and rulings under Rule 14 are reviewable only on abuse of discretion. *United States v. Goldfarb,* 643 F.2d 422, 434 (6th Cir.), *cert. denied,* 454 U.S. 827, 102 S.Ct. 118, 70 L.Ed.2d 101 (1981); *United States v. Bright,* 630 F.2d 804, 813 (5th Cir.1980); *United States v. Mardian,* 546 F.2d 973, 977 (D.C.Cir.1976) (en banc); *United States v. Marionneaux,* 514 F.2d 1244, 1248 (5th Cir. 1975), *cert. denied,* 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977).

 The general rule in conspiracy cases is that persons indicted together should be tried together. *United States v. Robinson,* 707 F.2d 872, 879 (6th Cir.1983);

*United States v. Dye,* 508 F.2d 1226, 1236 (6th Cir.), *cert. denied,* 420 U.S. 974, 95 S.Ct. 1395, 43 L.Ed.2d 653 (1975); *United States v. Echeles,* 352 F.2d 892, 896 (7th Cir.1965). This is particularly the case when, as here, offenses charged may be established against all the defendants with the same evidence. *United States v. Hamilton,* 689 F.2d 1262, 1275 (6th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 753, 74 L.Ed.2d 971 (1982); *Dye,* 508 F.2d at 1236; *United States v. McPartlin,* 595 F.2d 1321, 1333 (7th Cir.1979). The potential prejudice to the defendant must be balanced against competing societal goals of efficient and speedy trials. *United States v. Davis,* 707 F.2d 880 (6th Cir.1983); *United States v. Kopituk,* 690 F.2d 1289, 1317–18 (11th Cir. 1982); *Dye,* 508 F.2d at 1236; *United States v. Rogers,* 475 F.2d 821, 828 (7th Cir.1973). However, a single joint trial is impermissible if it violates a defendant's right to a fundamentally fair trial. *Echeles,* 352 F.2d at 896; *Barton v. United States,* 263 F.2d 894, 898 (5th Cir.1959).

Courts have put a heavy burden on defendants seeking severance, requiring a strong showing of prejudice. *Opper v. United States,* 348 U.S. 84, 94, 75 S.Ct. 158, 165, 99 L.Ed. 101 (1954); *Hamilton,* 689 F.2d at 1275; *Bright,* 630 F.2d at 813; *United States v. Marable,* 574 F.2d 224, 231 (5th Cir.1978). An especially compelling showing is required in RICO prosecutions. As the court noted in *United States v. Provenzano,* 688 F.2d 194, 199 (3d Cir.), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 492, 74 L.Ed.2d 634 (1982), "in a case of this nature it is preferable to have all of the parties tried together so that the full extent of the conspiracy may be developed."

 Upon a careful review of the record we cannot say that defendants have shown the compelling prejudice required for a granting of severance. At the heart of defendants' severance claim is the fact that

---

**12.** Rule 14 provides in relevant part:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. * * *

some of them were not named in all three of the predicate racketeering acts for which evidence was introduced. We recently held in *Davis* that this circumstance alone does not necessitate severance. 707 F.2d at 883. The jury was carefully instructed that the evidence of bribery was admissible only against Liberatore and Ciarcia, and there is nothing in the record to indicate that the jurors were confused or misled. Testimony regarding the other defendants in connection with the circumstances of the bribery was tangential, and overshadowed by the major role in the events played by Liberatore and Ciarcia. The slight potential prejudice to defendants Licavoli, Calandra and Cisternino in this case by these tangential references is outweighed by the judicial and societal interests in trying all of the defendants together. We hold that the trial judge did not abuse his discretion in denying defendants' motion for severance.

### X. The District Court Did Not Err in Declining to Excuse a Juror during the Trial

Mr. McCourt, a juror in defendants' RICO trial, discovered late in the presentation of the government's case that he was acquainted with one of the government's witnesses, a Ms. Weiss who managed the apartment house involved in the aborted bombing attempt. Mr. McCourt knew Ms. Weiss because his aunt and uncle lived in the same building as Danny Greene, but had not known Ms. Weiss' last name until he saw her at trial.

Defendant Licavoli maintains that the juror "wilfully concealed material facts bearing on his suitability." However, Mr. McCourt had stated during jury selection that he had had some contacts with Danny Greene. He could not have concealed his acquaintance with the witness because he did not know that she would be a witness until he saw her at trial. At that time he promptly informed the court that he knew Ms. Weiss. The trial judge then questioned Mr. McCourt regarding his ability to make an impartial judgment, and Mr. McCourt said that he felt he could. It is hard to see how Mr. McCourt's nodding acquaintance with a minor witness for the prosecution could have seriously prejudiced defendants. Ms. Weiss testified that Danny Greene lived with a woman in the apartment building that she managed, and that she had found a box and a bottle on the property. These facts were not in dispute, and counsel for defendant Licavoli chose not to cross-examine Ms. Weiss. Mr. McCourt had personal knowledge that older people frequently congregated in the lobby of the building, but this fact was also not in dispute. Accordingly we hold that the District Court did not err in its failure to excuse Mr. McCourt.

### XI. The District Court Did Not Err in Denying Liberatore's Motion for a New Trial

Defendant Liberatore appeals a denial of a motion for a new trial on his federal bribery conviction. Liberatore argues that there were significant inconsistencies in the testimony of witnesses who testified against him. The District Court found these inconsistencies to be insubstantial, and, having reviewed the record, we agree.

Defendants have raised a number of other claims, which we do not discuss here. We have considered these and find them without merit. We affirm defendants' RICO convictions and affirm the District Court's denial of Liberatore's motion for a new trial.

MERRITT, Circuit Judge, concurring.

I concur in the clear and well reasoned opinion prepared by Judge Kennedy.

It may seem strange for a federal court to uphold convictions under a federal statute based on two underlying predicate state offenses for which a defendant has either been acquitted at state trials (the murder of Danny Greene) or for which he could not be separately convicted or punished under state law (conspiracy to murder Danny Greene). But RICO is now unique. The normal rules of construction do not apply to RICO. Although I had earlier believed that normal canons of construction applicable to other criminal statutes should be applied to

RICO, *see United States v. Sutton,* 605 F.2d 260 (1979), *reversed en banc,* 642 F.2d 1001, 1042 (6th Cir.1980) (Merritt, J., dissenting), the Supreme Court has now made it clear that RICO is to be given the broadest and most expansive possible interpretation in order to carry out Congressional intent aimed at eliminating organized crime. *See United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) (RICO not limited to infiltration of a legitimate "enterprise"); *Russello v. United States,* —— U.S. ——, 104 S.Ct. 296, 78 L.Ed.2d 17 (1983). In *Russello,* a unanimous Supreme Court has pointed to RICO as the only federal criminal statute which should receive this kind of broad and expansive interpretation:

> The legislative history clearly demonstrates that the RICO statute was intended to provide new weapons of unprecedented scope for an assault upon organized crime and its economic roots.... Further, Congress directed, by § 904(a) of Pub.L. 91–452, 84 Stat. 947: "The provisions of this title shall be liberally construed to effectuate its remedial purposes." *So far as we have been made aware, this is the only substantive federal criminal statute that contains such a directive....*

104 S.Ct. at 302. (emphasis added). Thus, RICO, liberally construed as required by the Supreme Court, can reasonably be interpreted, and therefore should be interpreted, so that a defendant can be convicted even though he has already been acquitted or convicted of the two underlying offenses in state court and even though he could not be convicted or punished for both offenses together under state law.

In view of the Supreme Court's decisions in *Turkette* and *Russello,* I therefore agree with our Court's expansive construction of RICO in sections II, III, IV and VII.

On the question of the admissibility of Ferritto's prior testimony in the three state trials, the existence of the "enterprise" element in RICO is not a bar to admissibility, as defendants argue, because the "enterprise" element, in light of the Supreme Court's holding in *Turkette,* has become a fiction. It has become synonymous with another element of the offense, namely, the "pattern of racketeering activity," *i.e.,* the two underlying state offenses. The "enterprise" element now adds nothing to the so-called "pattern" element. The two predicate offenses are the "enterprise." All that is now required for a RICO offense is the commission of two predicate offenses which the state defines as separately chargeable and separately punishable. No further indicia of "enterprise" is now necessary.