831 F.2d 298
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Theodore WRIGHT, Leo Savage & Johnny Ringo, Defendants-Appellants.
 Nos. 86-3599, 86-3609 and 86-3613
 United States Court of Appeals, Sixth Circuit.
 October 5, 1987.
 
 Before BOYCE F. MARTIN, Jr. and BOGGS, Circuit Judges and WISEMAN, Chief District Judge.*
 PER CURIAM.
 
 
 1
 Appellants Theodore Wright and Leo Savage were tried, along with three others, and convicted by a jury of conspiracy to possess with intent to distribute, 21 U.S.C. Sec. 846, and distribution of various controlled substances, 21 U.S.C. Sec. 841(a)(1). Wright was convicted of unlawfully distributing Valium and Noludar, and Savage was convicted of unlawfully distributing Preludin within one thousand feet of the real property comprising an elementary school, 21 U.S.C. Sec. 845a. In a separate jury trial, appellant Johnny Ringo was convicted of the same conspiracy charge as well as distribution of Noludar on two occasions in August 1985. The appellants now appeal their respective convictions, raising several claims of error. We affirm.
 
 
 2
 * Between January 1984 and October 2, 1985, Dewey Moore headed an illegal drug operation in Columbus, Ohio. Moore primarily dispensed prescription drugs from his residence at 974 Mount Pleasant Avenue. In order to secure drugs for resale, Moore used Wright, Savage and Ringo, among others, to supply him with drugs in exchange for cash. Upon receiving the drugs, Moore would remove the contents from their original containers and repackage them in plastic bags for resale in smaller quantities.
 
 
 3
 Police surveillance of 974 Mount Pleasant Avenue between July 8 and October 2, 1985 revealed a steady stream of traffic going to and from the Moore house. Appellants Wright, Savage and Ringo were seen on several occasions at the Moore residence and in the presence of Dewey Moore. A police search of the trash picked up from the house revealed pill vials, syringes, pharmacy labels and plastic bags. Similar items were confiscated from inside the house on October 2, 1985, when police closed down the operation and executed a search warrant.
 
 II
 
 4
 A. Admission of Police Surveillance Photographs.
 
 
 5
 Ringo argues that the district court improperly admitted at his trial 261 police surveillance photographs showing many different people, including Ringo, in the vicinity of, and going in and out of, Dewey Moore's residence. The police took these photographs between July 1985 and October 2, 1985. During Ringo's trial, most, but not all, of the persons in the pictures were specifically identified by name, and a number of them testified, admitting to being drug users. Ringo argues here, as he did below, that these photographs were immaterial and prejudicial, particularly because he is seen in only a handful of the pictures and the government failed to identify all of the individuals who were shown.
 
 
 6
 Ringo's argument is without merit. It is well established that a district court's decision to admit (or exclude) photographs at a criminal trial should not be disturbed absent a showing of abuse of discretion. See, e.g., United States v. Helmel, 769 F.2d 1306, 1318 (8th Cir. 1985). In this drug conspiracy case, the photographs were relevant to show the primary scene where the drug transactions were occurring, and to corroborate the surveillance testimony of the police. More importantly, the pictures revealed Ringo's physical association with alleged coconspirators, including Dewey Moore, and with the location where the crimes charged were committed. See Helmel, 769 F.2d at 1318-19. The presence in the photographs of some unidentified persons may reduce its weight as evidence, but does not destroy its relevance. Moreover, to the extent Ringo contends that the probative value of the photographs was substantially outweighed by their prejudicial effect, Fed.R.Evid. 403, we have reviewed the government's exhibits and find no merit to this contention. See United States v. Laughlin, 772 F.2d 1382, 1393 (7th Cir. 1985) (under rule 403 the balance should be struck in favor of admissibility). Accordingly, the district court did not abuse its discretion in admitting the challenged photographs.
 
 
 7
 B. Severance.
 
 
 8
 Wright and Savage contend that the district court erred in failing to grant their motions for severance at trial under Rule 14, Fed.R.Crim.P.[1] They argue that they were prejudiced by evidence offered against the other defendants at trial, which they assert had little or no relevance to them, and that the court's instructions to the jury did not obviate that prejudice. They also claim that the complicated facts and repeated references to prostitution, drug addiction and the criminal records of their codefendants resulted in guilt by association.
 
 
 9
 A Rule 14 motion is committed to the discretion of the trial court, and this court will overturn a decision not to sever only if it constitutes a clear abuse of discretion. United States v. Swift, 809 F.2d 320, 322 (6th Cir. 1987); United States v. Licavoli, 725 F.2d 1040, 1051 (6th Cir.), cert. denied, 467 U.S. 1252 (1984). In order to establish an abuse of discretion, this court requires a 'strong showing of prejudice.' Licavoli, 725 F.2d at 1051 (and cases cited therein). 'The movant must demonstrate an inability of the jury to separate and treat distinctively evidence relevant to each particular defendant.' Swift, 809 F.2d at 322. Any potential jury confusion must 'be balanced against society's need for speedy and efficient trials.' United States v. Gallo, 763 F.2d 1504, 1524 (6th Cir. 1985), cert. denied, ---- U.S. ----, 106 S.Ct. 826 (1986).
 
 
 10
 Wright and Savage have not shown the compelling prejudice that would warrant deviating from the general rule in conspiracy cases that persons indicted together should be tried together. Licavoli, 725 F.2d at 1051 (and cases cited therein). The rule is particularly appropriate here where, for the most part, the 'offenses charged may be established against all the defendants with the same evidence.' Ibid. (citations omitted). In particular, most of the evidence was relevant in establishing the existence and operation of the drug conspiracy and was admissible against the defendants. Moreover, the trial court properly instructed the jury to give separate and individual consideration to each defendant. See United States v. Stull, 743 F.2d 439, 447 (6th Cir. 1984), cert. denied, 470 U.S. 1062 (1985) (and cases cited therein).
 
 
 11
 Wright and Savage respond that it is doubtful that with such complicated facts, presented over a twenty-five day period, the jury was able to draw any clear distinction between appellants and their codefendants. However, this conclusion is undermined by the jury's acquittal of two of the codefendants, and is contrary to the presumption that a jury is capable of sorting out the evidence and considering each count and each defendant separately. Swift, 809 F.2d at 323; United States v. Frazier, 584 F.2d 790, 795 (6th Cir. 1978). We conclude that the district court did not abuse its discretion in denying the motions for severance.
 
 
 12
 C. Admissibility of Pharmacy Vials and Labels.
 
 
 13
 Savage argues that the admission of two empty pharmacy vials, and the pharmacy labels attached thereto, was improper because the proffered evidence was inadmissible hearsay. Police obtained the vials and labels from the trash behind Dewey Moor's residence and from inside the house during the execution of a search warrant on October 2, 1985. In addition to Savage's name, the pharmacy labels contained the name of the pharmacy, the name of the prescribing doctor, the name of the drug, the date of issuance, and the serial number of the prescription.
 
 
 14
 The pharmacy vials and labels, along with other confiscated prescription vials, were properly offered as circumstantial evidence that Moore's residence was the scene of an illegal prescription drug operation. See United States v. Wilson, 532 F.2d 641, 645-46 (8th Cir.), cert. denied, 429 U.S. 846 (1976) (and cases cited therein). The exhibits were also properly admitted as circumstantial evidence of Savage's relationship to Dewey Moore's residence. See United States v. Marino, 658 F.2d 1120, 1124-25 (6th Cir. 1981); United States v. Mazyak, 650 F.2d 788, 792 (5th Cir. 1981), cert. denied, 455 U.S. 922 (1982); United States v. Mejias, 552 F.2d 435, 446 (2d Cir.), cert. denied sub nom. Padilla-Martinez v. United States, 434 U.S. 847 (1977).
 
 
 15
 Savage contends that the trial court improperly admitted the exhibits in connection with the distribution counts to establish that the prescription vials were issued to Savage on October 1, 1985 and did indeed contain Preludin. But there is no hearsay problem when the declarant is available for cross-examination concerning his prior statement, is under oath and in the presence of the trier of fact, and admits on the stand that he made the statement, that it is true, and that he adopts the statement. See Fed.R.Evid. 801(d)(1), Notes of Advisory Committee on Proposed Rules ('If the witness admits on the stand that he made the statement and that it was true, he adopts the statement and there is no hearsay problem.'). See also Bell v. City of Milwaukee, 746 F.2d 1205, 1274-75 (7th Cir. 1984). Here, the pharmacist who filled the prescriptions took the stand and testified under oath that he prepared the vial labels in question and gave the filled prescriptions of Preludin to Savage when Savage came in to the pharmacy. Since the pharmacist was subject to cross-examination, the district court did not err in admitting the exhibits.
 
 
 16
 D. Sufficiency of the Evidence.
 
 
 17
 Finally, Wright and Savage contend that the evidence presented at trial was insufficient to convict them of conspiracy and unlawful distribution of controlled substances. In reviewing the sufficiency of the evidence, we determine whether, 'viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' Jackson v. Virginia, 443 U.S. 307 (1979).
 
 
 18
 We conclude that appellants' contention is without merit. There was ample evidence from which a rational jury could conclude, beyond a reasonable doubt, that Wright and Savage had distributed controlled substances. Specifically, Columbus police officer Edward Cave testified that, while working undercover on November 7, 1985, he purchased quantities of Valium and Noludar from Wright at a convenience store near Moore's house. As to Savage, there was testimony from Elizabeth Eastman, a frequent visitor and sometime resident of the Moore house, that she saw Savage sell Preludin to Dewey Moore on nine separate occasions at Moore's house.
 
 
 19
 With respect to the conspiracy counts, the government must prove that a conspiracy existed, that the accused knew of the conspiracy, and that he knowingly and voluntarily joined it. United States v. Dempsey, 733 F.2d 392, 396 (6th Cir.), cert. denied, 469 U.S. 983 (1984). This court has long recognized that purely circumstantial evidence may be sufficient to sustain a conspiracy conviction. United States v. Pelfrey, 822 F.2d 628, 632 (6th Cir. 1987) (and cases cited therein). 'A defendant's guilty knowledge and voluntary participation may be inferred from surrounding circumstances.' United States v. Christian, 786 F.2d 203, 211 (6th Cir. 1986) (citation omitted).
 
 
 20
 Both appellants contend that there is nothing more here than their 'mere presence' at the Moore residence. Although mere presence alone will not support a conspiracy conviction, Christian, 786 F.2d at 211 (citing United States v. Kincade, 714 F.2d 1064, 1065 (11th Cir. 1983)), presence is a 'material and probative factor which the jury may consider in reaching its decision.' Kincade, 714 F.2d at 1065. Here, the evidence established far more than mere presence. It showed that Moore's house was the scene of an illegal drug distribution operation, and that Moore, in furtherance of that business, purchased drugs from confederates, discarded the original pill containers, and repackaged the drugs in plastic bags. Both Wright and Savage frequented the Moore residence on many occasions, and were seen selling drugs to Moore in return for cash. Wright was also seen buying drugs from others during his visits to the house. In addition, police recovered pharmacy vials bearing Savage's name from the trash behind the house and from inside the premises shortly after the prescriptions were filled. We think the evidence created a strong inference that Wright and Savage were 'clearly cognizant of and deeply enmeshed in the illegal activities of the conspiracy.' Pelfrey, 822 F.2d at 632. The evidence was sufficient to support the conspiracy convictions in this case.
 
 III
 
 21
 All of appellants' contentions being without merit, we AFFIRM all of their convictions.
 
 
 
 *
 The Honorable Thomas A. Wiseman, Jr., Chief United States District Judge for the Middle District of Tennessee, sitting by designation
 
 
 [1]
 Wright and Savage do not challenge the original joinder under Rule 8, Fed.R.Crim.P