**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Frank R. JOSEPH,**
**Defendant–Appellant.**

No. 87–1113.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 18, 1987.

Decided Dec. 23, 1987.

Hugh M. Davis, Jr. (argued), Detroit, Mich., for defendant-appellant.

David Morris, Asst. U.S. Atty., Detroit, Mich., Louis M. Fischer (Lead) (argued), U.S. Dept. of Justice, Appellate Section, Criminal Div., Washington, D.C., for plaintiff-appellee.

Before ENGEL and RYAN, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

RYAN, Circuit Judge.

Appellant Frank R. Joseph appeals his bench conviction for conspiring to violate RICO provision 18 U.S.C. § 1962(c) (1982), in violation of 18 U.S.C. § 1962(d) (1984). A RICO conspiracy conviction can be based on either an agreement to participate in the

conduct of an enterprise's affairs through the "collection of an unlawful debt," or an agreement to participate in the conduct of an enterprise's affairs through a "pattern of racketeering activity." We conclude that there is sufficient evidence to support a conspiracy conviction on either ground. Therefore, we affirm.

## I.

This case has an unusual and somewhat convoluted procedural history which will be explained in due course. It begins with the grand jury indictment of Joseph and seven others for violating RICO's substantive and conspiracy provisions. The defendants' alleged scheme was to lure people into rigged card games and then collect the debts they incurred. Five co-defendants pled guilty, and another's case was severed. Joseph opted for a bench trial and co-defendant Thomas Tripp requested a jury trial. Tripp's conviction was upheld by this court in *Tripp v. United States*, 782 F.2d 38 (6th Cir.), *cert. denied*, 475 U.S. 1128, 106 S.Ct. 1656, 90 L.Ed.2d 199 (1986).

The main actors in the card scheme were Tripp, Anthony Palazzolo, and Robert Doniere. Doniere and others would select "customers," subject to Tripp or Palazzolo's approval. Doniere testified that all the customers fit a general profile—wealthy men who liked to have fun and liked women. Doniere would approach the customer and lure him into a card game—often with promises of a "party" and sexual favors with women. Once recruited, the customer was subjected to any of several inducements to insure that he would participate in the card game. When the customer got into the game, a rigged deck was used and the customer lost. Attempts were then made to collect the debt. Doniere testified that the scam was in operation from 1978 to 1983, and involved twenty to twenty-five victims.

Joseph participated in the scheme by introducing potential customers to Doniere, and playing in one game. Doniere testified that Joseph participated in setting up a jeweler, Joel Watnick, who lost four or five thousand dollars in a game. Watnick testi-

fied that Joseph introduced him to Doniere and the latter induced Watnick to attend a card game in which Watnick lost three thousand dollars. According to Watnick, Joseph was not present at the game, and Doniere collected the debt from Watnick. Doniere also testified that Joseph introduced him to two other potential customers who, despite his efforts, Doniere was unable to lure into card games.

Joseph played in one game in 1980 in which Gerald Briskin lost one hundred and fifty-four thousand dollars while playing a hand that had originally been dealt to another player for whom Briskin agreed to substitute. Briskin gave Joseph an I.O.U. for the full amount of the losses. Briskin testified that Joseph later attempted to collect Briskin's half share of the debt, seventy-seven thousand dollars. This court specifically found, in *United States v. Joseph*, 781 F.2d 549, 553–54 (6th Cir.1986), that Joseph did not use implied threats or any other extortionate means when attempting collection of that debt. Joseph was unable to collect from Briskin and eventually told him to "forget" the debt. In that case, Joseph had been convicted in a bench trial before the United States District Court for the Eastern District of Michigan for violations of 18 U.S.C. §§ 894 and 1962(c), (d). On appeal to this court, the §§ 894 and 1962(c) convictions were reversed, and the § 1962(d) conviction was remanded to the district court with instructions to consider whether to reinstate it. The district court reinstated the § 1962(d) conviction and it is that judgment which Joseph now appeals.

## II.

In the original joint indictment, Joseph was charged in three counts for violations of 18 U.S.C. §§ 894 and 1962(c), (d). Count I related to participation in the affairs of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c). This count was based on two predicate acts: conspiring to violate Michigan gambling laws, and attempting to collect an unlawful extension of credit by extortionate means in violation of 18 U.S.C. § 894. Count IV of the joint indictment

alleged that Joseph violated 18 U.S.C. § 894 by attempting to collect illegally extended credit by implied threats of harm. On appeal, this court determined that the conviction under 18 U.S.C. § 894 (Count IV) was not supported by sufficient admissible evidence. Therefore, there was insufficient proof of one of the predicate acts relied on by the district court since the district court's conviction of Joseph for violating 18 U.S.C. § 1962(c) (Count I) relied on the § 894 conviction as one of the two required predicate acts. Thus, the reversal of the § 894 conviction required the reversal of the § 1962(c) conviction. Joseph's conviction for conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d) (Count II), was remanded to the district court for determination as to whether it was supported by sufficient admissible evidence. *United States v. Joseph*, 781 F.2d at 554–55 (6th Cir.1986). This court's remand instructions directed the district court to determine whether Joseph's conviction for conspiracy to violate § 1962(c)'s pattern of racketeering activity "prong" was supported by sufficient evidence. In disregard of those instructions, the district court reinstated Joseph's conviction based on its determination that Joseph had conspired to violate the collection of an unlawful debt "prong" of § 1962(c). Although we think this determination is correct, it is not what we directed be done and thus, is outside the scope of our remand instructions. Therefore, we will examine the record before us to determine whether Joseph's conviction for conspiracy to violate the pattern of racketeering activity prong of § 1962(c) is supported by sufficient evidence.[1]

### III.

Joseph was convicted of violating the RICO conspiracy statute by conspiring to violate 18 U.S.C. § 1962(c). 18 U.S.C. § 1962(d). The relevant language of that substantive RICO statute provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity....

18 U.S.C. § 1962(c).

A conviction for conspiracy to violate the "pattern of racketeering activity" prong of 18 U.S.C. § 1962(c) requires the government to prove the following elements:

1. The existence of an enterprise that affects interstate commerce;

2. That the defendant was "associated with" the enterprise; and

3. That the defendant agreed to participate in the conduct of the enterprise's affairs through a pattern of racketeering activity.

18 U.S.C. § 1962(c), (d); *United States v. Pepe*, 747 F.2d 632, 659 (11th Cir.1984). The district court found that the first two elements were clearly established. The appellant does not refute that this scheme, directed mainly at Detroit area victims with most of the card games held in Toledo, Ohio, constituted an enterprise affecting interstate commerce. Appellant argues, somewhat weakly, that he was not "associated with" the enterprise. Although he was involved to a lesser degree than some of his co-indictees, the district court correctly determined that he was "associated with" the enterprise. The district court's opinion below aptly describes in detail the evidence supporting that determination.

The third element, agreement to participate in the conduct of the enterprise's affairs through a "pattern of racketeering activity," is the focus of this appeal. The two-fold nature of this element was recently discussed by the Seventh Circuit:

From a conceptual standpoint a conspiracy to violate RICO can be analyzed as composed of two agreements (in reality they would be encompassed by the same

---

**1.** The charge of conspiracy to violate the pattern of racketeering activity "prong" of § 1962(c) has been consistently addressed by the appellant throughout the proceedings, including in the district court on remand. Therefore, we think it is appropriate for this court to examine the record to determine if there is sufficient evidence to support a conviction on that ground.

manifestations of the defendant): an agreement to conduct and participate in the affairs of an enterprise and an agreement to the commission of at least two predicate acts. Thus, a defendant who did not agree to the commission of crimes constituting a pattern of racketeering activity is not in violation of § 1962(d), even though he is somehow affiliated with a RICO enterprise, and neither is the defendant who agrees to the commission of two criminal acts and does not consent to the involvement of an enterprise.... If either aspect of the agreement is lacking, then there is insufficient evidence that the defendant embraced the objective of the alleged conspiracy. Thus, mere association with the enterprise would not constitute an actionable 1962(d) violation. In a RICO conspiracy, as in all conspiracies, agreement is essential.

*United States v. Neapolitan,* 791 F.2d 489, 499 (7th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 421, 93 L.Ed.2d 371; —— U.S. ——, 107 S.Ct. 422, 93 L.Ed.2d 372 (1986) (citations omitted).

Agreement to participate in the affairs of the enterprise can be inferred from Joseph's acts. *United States v. Elliott,* 571 F.2d 880, 903 (5th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978). The government was not required to prove that Joseph had knowledge of every detail of a plan; it is sufficient that he had knowledge of the "essential nature of the plan." *Id.* at 903 (quoting *United States v. Brasseux,* 509 F.2d 157, 160 n. 3 (5th Cir.1975)). Joseph brought potential victims into the scheme, played in one rigged game, and sought to collect a debt from that game from Dr. Briskin. Additionally, Joseph's involvement in setting up Joel Watnick, a jeweler who lost three thousand dollars, clearly indicates his knowledge of the scheme. Joseph made the arrangements for Doniere to meet with Watnick. Doniere testified that he spoke with Joseph and Tripp, and that they told him either that Joseph owed Watnick money or that Watnick owed Joseph money, and that Joseph wanted to get even with Watnick. Doniere stated that they also told him to "[b]ring a girl, try to get him [Watnick] into a game and take it from there." From this it can be inferred that Joseph clearly knew the nature of the enterprise and agreed to participate in the affairs of that enterprise.

Lastly, the government must show that Joseph agreed to participate in a "pattern of racketeering activity." A "pattern of racketeering activity" requires "at least two acts of racketeering activity...." 18 U.S.C. § 1961(5) (1984). "Racketeering activity" includes "any act or threat involving ... gambling which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1) (1984). Conspiracy to violate the "pattern of racketeering activity" prong of 18 U.S.C. § 1962(c) requires an agreement to commit two predicate acts. Whether the defendant must agree to *personally* commit the two acts is an issue on which the circuits are divided. *United States v. Neapolitan,* 791 F.2d at 494 (7th Cir.). However, in the appeal from which this case was originally remanded, this court held that: "[f]or a conspiracy conviction it is *not* necessary to prove that the defendant agreed to personally commit the requisite acts, but only that he agreed that another violate § 1962(c) by committing two acts of racketeering activity." *United States v. Joseph,* 781 F.2d at 554 (emphasis added).

Under Michigan law, conspiring to violate any provision related to legal gambling is punishable by imprisonment for not more than five years. Mich.Comp.Laws § 750.157a(b) (1968). In *Joseph,* this court conclusively determined that conspiracy to gamble can serve as a predicate act to support a conspiracy conviction pursuant to 18 U.S.C. § 1962(d). 781 F.2d at 555 (citing *United States v. Licavoli,* 725 F.2d 1040, 1044–45 (6th Cir.), *cert. denied,* 467 U.S. 1252, 104 S.Ct. 3535, 82 L.Ed.2d 840 (1984)). Clearly with respect to the incident with Gerald Briskin, Joseph conspired to violate Mich.Comp.Laws § 750.314 (1968), which makes it illegal for a person to win at gambling. Additionally, with respect to Joel Watnick, Joseph once again conspired

to violate this same section. Thus, Joseph has conspired to commit two acts of conspiracy, in violation of Michigan gambling laws. These violations establish the predicate acts necessary for a conspiracy conviction pursuant to 18 U.S.C. § 1962(d).

For these reasons, we AFFIRM the district court's reinstatement of Joseph's conspiracy conviction pursuant to 18 U.S.C. § 1962(d).