884 F.2d 581
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Curtis NAPIER, Ray Hernandez, Tommy L. Chatfield, Brenda
Harris, Ralph Jackson, Defendants-Appellants.
 Nos. 88-1684, 88-1693, 88-1763, 88-1765 and 88-1766.
 United States Court of Appeals, Sixth Circuit.
 Sept. 1, 1989.
 
 Before BOYCE F. MARTIN, Jr., MILBURN and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendants appeal the judgment of the United States District Court for the Eastern District of Michigan finding them guilty of RICO conspiracy and conspiracy to deal in narcotics. For the reasons stated below, we affirm.
 
 
 2
 The defendants in this case were accused of participating in the operations of the Young Boys Incorporated, a criminal organization in Detroit, Michigan. The principal activity of the Young Boys Incorporated was the purchase and sale of controlled substances, primarily heroin and cocaine. The group sold heroin in small envelopes marked with a distinctive and recognizable "A-team" logo. They used violence and murder to reduce competition for drug sales and to enforce discipline among the organization's members. In 1983, Young Boys operations were substantially reduced by the conviction of several of its members, including the group's leader, Milton David Jones. The Young Boys however, continued to operate until 1987. Milton Jones allegedly continued to direct Young Boys activities in Detroit from his prison cell in Texas with the help of his wife, Portia Jones and several Young Boys members.
 
 
 3
 On July 21, 1987, a grand jury indicted 26 individuals suspected of working for the Young Boys. A superseding indictment was entered on October 30, 1987, which charged these same individuals with RICO, 18 U.S.C. Sec. 1962(c), RICO conspiracy, 18 U.S.C. Sec. 1962(d), and conspiracy to possess with intent to distribute heroin, 21 U.S.C. Sec. 846. Seven of these defendants went to trial on March 9, 1988, for the RICO conspiracy and heroin conspiracy charges. Of these seven, five were convicted. Curtis Napier, Tommy Lee Chatfield, Brenda Harris and Ralph Jackson were each found guilty of RICO conspiracy. Napier and Ray Hernandez were also convicted of heroin conspiracy. Harris received a mistrial on the charge of heroin conspiracy because of a hung jury.
 
 
 4
 Curtis Napier argues that the evidence at trial was insufficient to convict him of RICO conspiracy because the government's proof failed to establish an "enterprise" as distinct from a "conspiracy" as the law requires. See United States v. Manzelda, 782 F.2d 533, 538-39 (5th Cir.1986). The government argues that it met this requirement. It argues that RICO conspiracy is an agreement to participate in the conduct of a criminal enterprise's activities through the commission of predicate offenses. It is not simply an agreement to commit a pattern of racketeering activity, that is, simple conspiracy. United States v. Riccobene, 709 F.2d 214, 224 (3d Cir.), cert. denied, 464 U.S. 849 (1983). The existence of the enterprise goes beyond the existence of a conspiracy to commit racketeering activity. The government correctly asserts that its proof that Young Boys Incorporated had an on-going organization and structure satisfied the requirement of the independent existence of the enterprise. The evidence showed that Young Boys Incorporated was a sophisticated organization that assigned various tasks to different members, and that this structure remained in place beyond any simple conspiracy.
 
 
 5
 Evidence is sufficient to prove guilt if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). In applying this standard a court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. On appeal of a finding of guilt "[t]he government must be given the benefit of all inferences which can be reasonably drawn from the evidence ... even if the evidence is circumstantial." United States v. Adamo, 742 F.2d 927, 932 (6th Cir.), cert. denied, 467 U.S. 1193 (1984). A rational jury could have found Napier guilty of RICO conspiracy based upon the evidence presented at trial.
 
 
 6
 Napier also asserts that the proofs at trial established multiple conspiracies which constituted a variance from the indictment. If an indictment charges a simple conspiracy but the evidence at trial can be reasonably be construed only as supporting multiple conspiracies, then a variance exists which, if prejudicial, constitutes reversible error. United States v. Warner, 690 F.2d 545, 548 (6th Cir.1982). Napier asserts the proofs show three distinct conspiracies: one organized by Milton Jones in December 1980 until the first Young Boys indictment in December, 1982; a second in 1983 with Nicholas Scott; a third organized by Portia Jones and directed by her husband Milton. The government does not dispute the cessation of Young Boys activities following the first indictment and their resumption in 1983 under Portia Jones. Contrary to Napier's assertions, however, charging multiple conspiracies under a single RICO enterprise is permissible. See, e.g., United States v. Ruggiero, 726 F.2d 913, 912 (2d Cir.), cert. denied, 404 U.S. 849 (1983); United States v. Elliot, 571 F.2d 913, 912 (2d Cir.), cert. denied, 404 U.S. 849 (1983); United States v. Elliot, 571 F.2d 880, 903 (5th Cir.), cert. denied, 439 U.S. 953 (1978). There was no variance between the indictment and the proof at trial.
 
 
 7
 Napier also argues that his conviction for RICO conspiracy is prohibited by the fifth amendment's bar against double jeopardy. His RICO conspiracy conviction was predicated on racketeering activities for which he had previously pled guilty. This Court has expressly held that prior convictions may be used to obtain a RICO conviction and that such use does not violate the bar against double jeopardy. United States v. Licavoli, 725 F.2d 1040, 1050 (6th Cir.), cert. denied, 467 U.S. 1252 (1984).
 
 
 8
 Brenda Harris argues that the government failed to prove an agreement on her part to participate in the affairs of the Young Boys criminal enterprise. Unfortunately, Harris asserts that such agreement must somehow be explicit. An agreement can, however, be inferred from the evidence of a defendant's acts. See, e.g., United States v. Joseph, 835 F.2d 1149, 1152 (6th Cir.1987). Harris also argues that the government failed to prove her performance of two predicate offenses showing membership within the Young Boys enterprise. She asserts that use of her home for the preparation of heroin and her cocaine dealing with Kevin Wilson were not predicate acts. She asserts that the cocaine deals were independent of the Young Boys criminal enterprise. She argues that she dealt in cocaine in order to pay off a cocaine debt owed by her sister, Linda Harris, whose life Wilson had threatened. She also asserts that her apartment was used for processing and packaging heroin against her will. These, however, were matters of credibility for the jury to decide. We may not disturb a jury's determination of credibility. See, e.g., United States v. Stull, 743 F.2d 439, 442 (6th Cir.1984), cert. denied, 470 U.S. 1062 (1985).
 
 
 9
 The evidence shows that Harris distributed heroin and sold cocaine to other members of the enterprise. Nicholas Scott, a member of Young Boys, testified that Portia Jones informed him that Harris could supply him with heroin if other sources were unavailable. All he needed to do was to contact Harris on her beeper. Kevin Wilson, another member of the group, testified that during 1981 and 1982 he received cocaine from Jones, gave it to Harris who sold it and then returned the proceeds. David Garmon, a cellmate of Milton Jones, testified that Jones referred to Harris as one of his workers. Margaret Dixon, Charles Obey and Spencer Holloway, also members of Young Boys, testified that Harris' home was often used as a place where heroin was processed and packaged for sale. Based upon this evidence, a rational jury could find Harris guilty of RICO conspiracy.
 
 
 10
 Harris also argues that her conviction resulted from a fatal variance between the indictment, the document "Government's Version of the Offense," and the proof offered at trial. The government filed the document at the direction of the court to assist it in deciding several severance motions. Specifically, it was filed to eliminate confusion as to who was charged with predicate acts of murder and who was not. The document stated that Harris entered both the RICO and heroin conspiracies in approximately 1984. Harris argues the evidence at trial that she sold cocaine obtained from Milton Jones in 1981 and 1982 went beyond the government's version of the offense. Contrary to Harris' assertions, however, the "Governments Version of the Offense" was not a bill of particulars. Consequently, her argument that there was a judicial amendment to the indictment or constructive amendment fails. Furthermore, her assertion that the proof at trial was at variance with the charges in the superseding indictment is simply false.
 
 
 11
 Ralph Jackson argues that certain bad character evidence used against him was improperly admitted in violation of Fed.R.Evid. 404(b). He contends that the trial court failed to consider the prejudicial effect of this evidence as balanced against its probative value as required by Fed.R.Evid. 403. The government correctly asserts, however, that this evidence could be properly admitted under Rule 404(b) to show Jackson's plan and intent to participate in the Young Boys organization.
 
 
 12
 Jackson also argues that his conviction for RICO conspiracy is barred by the federal statute of limitations for non-capital offenses. The prosecution of offenses committed five years prior to the indictment charging those offenses is barred by 18 U.S.C. Sec. 3282. This argument lacks merit, however, because under RICO only the second predicate act need come within section 3282. The first act may occur within ten years of the second. See, e.g., United States v. Pepe, 747 F.2d 632 (11th Cir.1984).
 
 
 13
 Tommy Chatfield argues that the government's proof was insufficient to show his participation in the Young Boys enterprise. Kevin Wilson, a Young Boys member, testified that when he and Chatfield were cellmates, Chatfield said he supplied guns to Milton and Portia Jones. The guns were shipped by bus, hidden in potato sacks. After the two men were released from prison, Wilson, acting in cooperation with the authorities, arranged to purchase two guns from Chatfield. Tommy Chatfield insists that he had no knowledge of the nature and extent of Young Boys operations, or of the guns' intended use. Proof of explicit knowledge is not necessary, however, to show participation in a conspiracy. United States v. Betancourt, 838 F.2d 168 (6th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 1748 (1988). The jury could infer Chatfield's participation in Young Boys from his shipping of guns to Milton and Portia Jones. He asserts that his involvement in the enterprise is completely circumstantial and that Wilson's testimony as to Chatfield's own confession lacks corroborating evidence. The arrangement between Chatfield and Wilson to ship guns would, however, seem to corroborate Wilson's testimony concerning Chatfield's involvement with Young Boys. A rational jury could have found Chatfield guilty of RICO conspiracy based upon this evidence.
 
 
 14
 Ray Hernandez argues that the evidence at trial was insufficient to prove him guilty of conspiracy to distribute heroin. He argues that the only evidence against him was the testimony of David Garmon. Garmon testified that when in prison in Texas he heard Hernandez tell Milton Jones that he could supply Jones with a type of brown heroin known as "Mexican mud." Garmon also testified that Jones claimed to have made a deal with Hernandez in late 1983. Hernandez asserts that this evidence fails to link him with Young Boys Incorporated. He had no knowledge of the existence or nature of this enterprise.
 
 
 15
 All that need be proved to convict Hernandez of conspiracy to possess with intent to distribute heroin and conspiracy to distribute heroin is an agreement to participate in a known joint venture to achieve a common goal. United States v. Bourjaily, 781 F.2d 539, 544 (6th Cir.1986), aff'd, --- U.S. ----, 107 S.Ct. 2775 (1987). Indirect evidence of the conspiracy is permissible, for example, the interdependence of a "chain" drug distribution conspiracy. Id. at 544. Garmon's testimony establishes such a conspiracy. He testified that Hernandez told Jones he would supply him with all the "Mexican mud" heroin he wanted. Jones later told Garmon that he made a deal with Hernandez, including an arrangement to pay him up front through Western Union. Garmon overheard phone conversations in which Jones arranged for his wife, Portia, to pick up the heroin and deliver it to Detroit. Both Spencer Holloway and Margaret Dixon, two Young Boys members, testified that Portia Jones made trips to Texas to pick up the heroin. Finally, Nicholas Scott, another Young Boys member, testified that Portia Jones supplied him with "Mexican mud." Portia Jones told Scott that Milton Jones had a source of heroin in prison who was a Mexican.
 
 
 16
 In the alternative Hernandez argues that if the evidence shows any conspiracy at all it shows a small conspiracy between himself and Milton Jones to distribute heroin within the prison. He asserts that any heroin deals with Jones were in no way related to Young Boys. Hernandez fails to show how no rational jury could conclude from all the evidence at trial that Hernandez sold heroin to Young Boys members.
 
 
 17
 Hernandez argues that evidence was improperly admitted against him. David Garmon, Milton Jones' cellmate in Texas, testified about marijuana transactions between Hernandez and Jones. Hernandez asserts that this testimony was impermissible bad character testimony under Rule 404(b). The alleged heroin and marijuana deals were separate and distinct.
 
 
 18
 The government notes, however, that this Court has allowed the use of similar acts evidence in similar situations. In United States v. Ismail, 756 F.2d 1253 (6th Cir.1985), the court allowed evidence of the defendant's dealings in hashish and cocaine even though he was prosecuted for trafficking in heroin. Although these prior acts were outside the period of time in the indictment, the court found that they were relevant to show an ongoing scheme. Id. at 1255. Moreover, this Court has held that where a drug conspiracy is charged, prior drug dealing not charged in the indictment may be used to show the background and development of the conspiracy. United States v. Passarella, 788 F.2d 372 (6th Cir.1986).
 
 
 19
 Finally, Hernandez also argues that he is entitled to resentencing. He asserts that during sentencing he was unrepresented by counsel and that the court did not advise him as to the dangers of self-representation. Hernandez asserts that his waiver of counsel was not made voluntarily and knowingly under this Court's opinion in United States v. McDowell, 814 F.2d 245 (6th Cir.), cert. denied, --- U.S. ----, 108 S.Ct. 478 (1987). McDowell requires that the trial court make certain inquiries of a defendant considering self-representation. The court must discern the defendant's knowledge of the law, familiarity with the rules of evidence and procedure, and knowledge of the possible maximum sentence and fine. The court must discourage self-representation. If the defendant persists, the court must make an express finding of voluntary waiver. Hernandez asserts that the court did not discourage his self-representation, that it failed to make the inquiries required by McDowell, and that it failed to make the express finding of a knowing and voluntary waiver.
 
 
 20
 The elaborate waiver procedure outlined in McDowell does not apply to waiver of counsel during sentencing. The dangers of self-representation at trial are simply not present at sentencing. The government also notes that the court in McDowell considered the record as a whole and found that the defendant could understand the dangers of self-representation. The same finding could be made here.
 
 
 21
 The judgment of the district court is affirmed.